UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| VOTEHEMP, INC., | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 02-985 (RBW) |
| DRUG ENFORCEMENT ADMINISTRATION, et al., | ) |
| Defendants. | ) |

### MEMORANDUM OPINION

Currently before this Court is the Drug Enforcement Agency's ("DEA") Supplemental Vaughn Index[1] ("Supplemental Index") [D.E. # 44] and the Plaintiff's Motion for Entry of Order as to Remaining Documents in Dispute ("Pl.'s Mot.") [D.E. # 50]. This case arises from a Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), request by the plaintiff for the production of six documents pertaining to the DEA's policies and regulations governing the production and use of hemp in the United States. Based on the arguments and submissions presented by the parties, the Court will deny the plaintiff's request for the disclosure of the four documents that remained in dispute following the issuance of the Court's earlier opinion. Memorandum Opinion ("Mem. Op.").

### I. FACTUAL BACKGROUND

On October 15, 2004, this Court issued a Memorandum Opinion and Order, which granted in part and denied in part, both parties' cross motions for summary judgment filed in

---

[1] Vaughn v. Rosen, 523 F.2d 1136 (D.C. Cir. 1975).

relationship to the DEA's refusal to disclose certain documents pertaining to its policies and regulations governing the production and use of hemp in the United States under various FOIA exemptions. Memorandum Opinion ("Mem. Op.") at 1. With respect to six documents - Bates stamped 884[2], 265, 389, 351-53, 386 and 438-51 - the Court was uncertain, based on the descriptions noted in the DEA's original Vaughn Index, whether the DEA was justifiably withholding the documents pursuant to 5 U.S.C. § 552(b)(5) (2000) ("Exemption 5"). Id. at 25-32. The Court therefore requested that the DEA file a supplemental Vaughn Index providing more detailed information as to why these documents should be withheld. Id. On November 17, 2004, the DEA filed its Supplemental Index in response to the Court's instruction, detailing why Exemption 5 applied to each of the above enumerated documents. On June 27, 2005, the plaintiff Votehemp, Inc., filed its Motion for Entry of Order as to Remaining Documents in Dispute, wherein it requested that the Court order disclosure of disputed documents 389, 351-53, 386, and 438-51. Pl.'s Mot. at 1. Later, on July 11, 2005, the DEA filed its Memorandum Opposing Plaintiff's Motion for Final Judgment ("Defs.' Opp'n"), wherein it supplemented the positions advanced in its Supplemental Index.[3] Defs.' Opp'n. The DEA also submitted documents 351-53, 386, and 438-51 to the Court for its in camera review.

---

[2] The DEA notes that the plaintiff has withdrawn its challenge to the disclosure of document 884. Supplemental Index ¶ 12 (citing (Mem. Op. at 17 n.8)). Thus, the dispute over document 884 is now moot, and the Court need not assess whether it properly falls under Exemption 5.

[3] One important addition to the DEA's Supplemental Index is the withdrawal of its reliance on Exemption 5 as justification for not disclosing document 389 and its decision to release this document to the plaintiff. Defs.' Opp'n at 2, 13. As a result of the DEA's disclosure of document 389, the dispute over document 389 is also moot, and the Court will therefore not assess whether document 389 properly falls under Exemption 5.

## II. Standard of Review

1.  **Exemption 5 of the FOIA**

Exemption 5 provides that the "inter-agency or intra-agency memorand[a] or letters which would not be available by law to a party other than an agency in litigation with the agency" are not subject to disclosure. 5 U.S.C. § 552 (b)(5). "To qualify [for non-disclosure under Exemption 5], a document must thus satisfy two conditions: its source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." Dep't of Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001). The threshold issue that must be addressed when Exemption 5 is asserted is whether the records in question qualify as "inter-agency or intra-agency memorand[a]." Judicial Watch, Inc. v. Dep't of Commerce, 90 F. Supp. 2d 9, 13 (D.D.C. 2000).

"With respect to the secondary consideration under Exemption 5 - whether such materials would not be 'available by law in litigation with the agency,'" id., "the parameters of Exemption 5 are determined by reference to the protections available to litigants in civil discovery . . . ." Burka v. Dep't of Health & Human Servs., 87 F.3d 508, 516 (D.C. Cir. 1996). Thus, if a document requested pursuant to the FOIA would normally be subject to disclosure in the civil discovery context, it must also be disclosed under the FOIA. Id. Conversely, information that is routinely not subject to disclosure in the civil discovery process is exempt from disclosure under Exemption 5. Id. Moreover, "to justify non-disclosure under Exemption 5, an agency must show that the type of material it seeks to withhold is generally protected in civil discovery for reasons similar to those asserted by the agency in the FOIA context." Id. at

517.  Thus, courts have incorporated three traditional civil discovery privileges into Exemption 5:  (1) the deliberative process privilege; (2) the attorney-client privilege; and (3) the attorney work-product privilege.  NLRB v. Sears, Roebuck, & Co., 421 U.S. 132, 148-49 (1975); Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 862, 866 (D.C. Cir. 1980).  Only the first two privileges are asserted by the defendants.

### A.  The Deliberative Process Privilege

The deliberative process privilege protects from disclosure "documents reflecting advisory opinions, recommendations and deliberations that are part of a process by which [governmental] decisions and policies are formulated." Klamath, 532 U.S. at 8.  The purpose of the deliberative process privilege is to ensure open communication between subordinates and superiors, prevent premature disclosure of policies before final adoption, and to avoid public confusion if grounds for policies that were not part of the final adopted agency policy happened to be exposed to the public.  Defenders of Wildlife v. Dep't of Agric., 311 F. Supp. 2d 44, 57 (D.D.C. 2004) (citations omitted).  Thus, when a court reviews whether an agency properly withheld documents under the deliberative process privilege, the critical question to ask is whether "disclosure of [the] materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions."  Formaldehyde Instit. v. Dep't of Health and Human Servs., 889 F.2d 1118, 1121-22 (D.C. Cir. 1989); see also Sears, 421 U.S. at 151 (noting that the main purpose of the deliberative process privilege is to "prevent injury to the quality of agency decisions").

To be exempt from disclosure under the deliberative process privilege, the agency must

show that its decision is both (1) predecisional and (2) deliberative. Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 39 (D.C. Cir. 2002). "A document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision', rather than to support a decision already made." Petroleum Info. Corp. v. Dep't of Interior, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (quoting Renegotiation Bd. v. Grumman Aircraft Eng'g Corp., 421 U.S. 168, 184 (1975)). The preparation of the document must therefore be "[a]ntecedent to the adoption of an agency policy." Jordan v. Dep't of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978). However, a document cannot be characterized as predecisional "if it is adopted, formally or informally, as the agency position on an issue or is used by the agency in its dealings with the public." Coastal States, 617 F.2d at 866. Examples of predecisional documents include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." Id.

A document is deliberative if the "materials . . . bear on the formulation or exercise of agency policy-oriented judgment." Petroleum Info. Corp., 976 F.2d at 1435. The information may be "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." Vaughn, 523 F.2d at 1144. The information may also concern "factual summaries that were written to assist [in] the making of a discretionary decision." Mapother v. Dep't of Justice, 3 F.3d 1533, 1539 (D.C. Cir. 1993). Most importantly, the document must reflect the "give-and-take of the consultative process." Senate of Puerto Rico v. Dep't of Justice, 823 F.2d 574, 585 (D.C. Cir. 1987). Other factors bear on whether a document is sufficiently deliberative. See Animal Legal Def. Fund, Inc. v. Dep't of the Air Force, 44 F. Supp. 2d 295, 300 (D.D.C. 1999). For example, in determining whether the

deliberative process privilege should apply to a particular document, courts often look at "the 'nature of the decisionmaking authority vested in the officer or person issuing the disputed document', and the relative positions in the agency's 'chain of command' occupied by the document's author and recipient." Id. (quoting Puerto Rico, 823 F.2d at 586).  Although there are many cases in this Circuit which discuss the deliberative process privilege, these cases "are of limited help . . . because the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process." Coastal States, 617 F.2d at 867.

### B.  The Attorney-Client Privilege

The attorney-client "privilege has a proper role to play in exemption five cases . . . ." In re Lindsey, 158 F.3d 1263, 1269 (D.C. Cir. 1998).  Aside from the protections provided by the attorney-client privilege in the private sector, "the privilege also functions to protect communications between government attorneys and client agencies or departments, as evidenced by its inclusion in the FOIA, much as it operates to protect attorney-client communications in the private sector." Id.  Thus, when "the Government is dealing with its attorneys as would any private party seeking advice to protect personal interests, [and] needs the same assurance of confidentiality so it will not be deterred from full and frank communications with its counselors," Exemption 5 applies. Id. (quoting Coastal States, 617 F.2d at 863).

To invoke the attorney-client privilege, an agency must show that the document "(1) involves 'confidential communications between an attorney and [his or her] client' and (2) relates to a 'legal matter for which the client has sought professional advice.'" Judicial Watch, Inc. v. U.S. Postal Serv., 297 F. Supp. 2d 252, 267 (D.D.C. 2004) (quoting Mead Data Cent., Inc. v. Dep't of the Air Force, 566 F.2d 242, 252 (D.C. Cir. 1977).  However, the attorney-client

privilege does not give the agency the ability "to withhold a document merely because it is a communication between the agency and its lawyers." Id. The agency must show that the information provided to its lawyers was intended to be confidential and was not disclosed to a third party. Id.

### C. Segregability

"It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." Mead Data, 566 F.2d at 260. Section 552(b) of the FOIA incorporates this requirement into the Act, and provides that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt . . . ." 5 U.S.C. § 552(b). To satisfy its burden, "the agency must provide a 'detailed justification' for its non-segregability . . . . However, the agency is not required to provide so much detail that the exempt material would be effectively disclosed." Johnson v. Executive Office for U.S. Attorneys, 310 F.3d 771, 776 (D.C. Cir. 2002) (citation omitted). Ultimately, to warrant exemption on the basis of non-segregability, the agency must overcome two hurdles. First, the agency must demonstrate that the documents are exempt from disclosure under Exemption 5, e.g., disclosure would expose an agency's decisionmaking process. Second, the agency must specifically demonstrate that the exempt portions of the documents are inextricably intertwined with non-exempt portions of the document. See Animal Legal Def. Fund, Inc., 44 F. Supp. 2d at 301.

### III. Analysis

1.    **Document 265**

In its earlier opinion, the Court found that while document 265 appeared to be an intra-agency memorandum containing legal analysis by counsel for the DEA, it could not conclude that this document was exempted from disclosure under Exemption 5 because the defendants had failed to address whether it was "intended to be confidential and was not disclosed to any third party." Mem. Op. at 28. In its supplemental Vaughn Index, the DEA declares that document 265:

> is an undated handwritten note commenting on an unidentified draft document. The note was from the Chief of the Regulatory Drafting Unit, Office of Diversion Control, to the Chief of the Liaison and Policy Section, Office of Diversion Control. The sole topic of the comments on the unidentified draft document was legal advice provided on the draft from the Acting Associate Chief Counsel for Diversion/Regulatory Litigation . . . .
> The nature of the note confirms that it is a confidential communication. It passes final comments from a legal adviser on a draft document to the party who is to release the draft document. These comments proposed a substantive, legal change to the draft document prior to its release. There is no evidence either in the files or from discussions with the parties to the note that it has ever been disclosed to third-parties, nor that it was ever intended to be disclosed.

Supplemental Index ¶¶ 14-15. The defendants have now satisfied the Court's original concerns. Therefore, the Court concludes that document 265 falls within the scope of attorney-client privilege, as it clearly was intended to be a confidential communication between counsel and the agency, and was not disclosed to any third parties. Accordingly, document 265 is exempt from disclosure pursuant to Exemption 5.

### 2. Document 351-53

In its earlier opinion, the Court held with respect to document 351-53, that the defendants "failed to demonstrate that [this document is] protected from disclosure pursuant to . . . the deliberative process [privilege] . . . and ha[d] failed to provide detailed justifications explaining why non-exempt portions of the [document] cannot be disintegrated from the alleged exempt portions." Mem. Op. at 32. In response to this conclusion, the defendants' supplemental Vaughn Index states that document 351-53:

> constitute[s] a memo dated 5 July 2000 from a doctorate-level DEA scientist to the Chief of the Office of Diversion Control, Drug & Chemical Evaluation Section. The subject of the memo is "Response to 'Facts needed for hemp 'rule 3.'" The body of the memo makes clear that the scientist is responding to three questions raised by an attorney in the DEA Chief Counsel's Office, Regulatory Section, concerning THC levels in hemp. This attorney was involved in drafting the challenged hemp regulations . . . . This memo satisfies the deliberative process privilege because it is part of the agency's underlying effort that lead to the promulgation of the hemp regulations. The timing clearly establishes that it predated the release of the challenged DEA hemp regulations. Here a scientist is providing his scientific opinion to one of the principal legal drafters of the regulations concerning THC levels in hemp and the ability to divert that THC for illicit purposes. The memo consists solely of the scientist's expert opinion on these questions. The memo contains few if any isolated objective facts, and none that could be segregated from the scientist's opinions . . . .

Supplemental Index ¶¶ 18-19.

In light of these new assertions, the Court finds that document 351-53 is exempt from disclosure. The document, which was provided to the Court for its in camera review, is exempt from disclosure because it is both predecisional and deliberative. See Norton, 309 F.3d at 39. The document is predecisional because, as asserted by the DEA, its date of July 5, 2000, predates

the release of the challenged hemp regulations published on October 9, 2001. Defs.' Opp'n at 9. The document is also deliberative because, although it fails to make recommendations or express opinions related to legal or policy matters, see Vaughn, 523 F.2d at 1144, it nonetheless concerns scientific facts ultimately used in the deliberative process regarding the promulgation of the DEA's hemp regulations. Defs.' Opp'n at 8. Document 351-53 therefore involves a "factual [summary] that [was] written to assist [in] the making of a discretionary decision." Mapother, 3 F.3d at 1539. Thus, it is exempt from disclosure pursuant to Exemption 5.

With respect to segregability, the Court finds that there are no non-exempt facts contained in document 351-53 that merit an analysis of whether the DEA's non-segregability determination is warranted. The Court in Mapother found that most of the factual information compiled by the Department of Justice in issuing its "Waldheim Report" on the war crimes of Kurt Waldheim, was linked to the deliberative process of issuing that report and was therefore exempt from disclosure. Mapother, 3 F.3d at 1539. The only information the Mapother Court found not exempt from disclosure related to a chronological listing of Kurt Waldheim's military career because it "reflect[ed] no point of view." Id. Here, unlike in Mapother, all the facts noted in document 351-53 relate to a point of view and are associated with a deliberative process, as they concern the formulation of Rule 3 of the DEA's hemp regulations. Supplemental Index ¶ 18. Accordingly, document 351-53 is exempt from disclosure pursuant to Exemption 5.

### 3. Document 386

In its earlier opinion, the Court held with respect to document 386, that the defendants "failed to demonstrate that [this document is] protected from disclosure pursuant to . . . the deliberative process [privilege] . . . and ha[d] failed to provide detailed justifications explaining

why non-exempt portions of the [document] cannot be disintegrated from the alleged exempt portions." Mem. Op. at 32. In response to this conclusion, the supplemental Vaughn Index asserts that document 386:

> is a companion memo to pages 351 to 353. Also dated 5 July 2000, it is from the same DEA scientist to the Chief of the Office of Diversion Control, Drug & Chemical Evaluation Section. And again it responds to another question from the same regulatory lawyer in the Office of the DEA Chief Counsel. The topic is "Cannabidiol conversion to THC."
> . . . This memo predates issuance of the hemp regulations and provides an expert scientific opinion to one of the drafters of the regulations. Here, the DEA scientist was requested to respond to an argument being put forward by the proponents of growing hemp. The facts are inexorably intertwined with the scientist's opinion. Hence, there are no segregable facts, only expert opinion being provided up the chain-of-command to the ultimate decision makers.

Supplemental Index ¶¶ 20-21.

In light of these new assertions, the Court finds that document 386, which was provided to the Court for its in camera review, is exempt from disclosure because it is an intra-agency memoranda between a DEA scientist and the Chief of the DEA's Office of Diversion Control, that is both predecisional and deliberative. See Norton, 309 F.3d at 39. The document is predecisional because, as asserted by the DEA, its date of July 5, 2000, predates the release of the challenged hemp regulations of October 9, 2001. Defs.' Opp'n at 9. The document is also deliberative because it "expresses [scientific] opinions on . . . policy matters." Vaughn, 523 F.2d at 1144. It also represents information "bear[ing] on the formulation or exercise of agency policy-oriented judgment[,]" Petroleum Info. Corp., 976 F.2d at 1435, as it was drafted for the purpose of providing expert opinion to one of the drafters of the hemp regulation. Supplemental

11

Index ¶ 21.

With respect to the segregability of document 386, the Court finds that there are no non-exempt portions that would warrant an analysis of whether the DEA has adequately justified total non-segregability. The document contains only scientific opinion associated with the DEA's deliberative process. Accordingly, document 386 is exempt from disclosure pursuant to Exemption 5.

### 4. Document 438-51

In its prior opinion, the Court held with respect to document 438-51, that the defendants had "failed to demonstrate that [this document is] protected from disclosure pursuant to . . . the deliberative process [privilege] . . . and ha[d] failed to provide detailed justifications explaining why non-exempt portions of the [document] cannot be disintegrated from the alleged exempt portions." Mem. Op. at 32. In response to this ruling, the defendants' supplemental Vaughn Index asserts that document 438-51 is:

> a draft report dated April 7, 2000 prepared for DEA by a consultant hired to explore the status of hemp industry worldwide . . . . This draft report was produced to assist the Office of Diversion Control, Regulatory Drafting Unit, to draft the challenged hemp regulations. It's [sic] purpose was to identify issues related to the economic impact of hemp. As such, the selection of these issues for presentation to the decision makers is protected under the deliberative process privilege, even to the extent that they may otherwise constitute segregable objective facts. This draft report was reviewed prior to issuance of the regulations. After review, it was determined not to request further information, so no final report was generated.

Supplemental Index ¶¶ 22-23.

Based on these new assertions, the Court finds that document 438-51, which was

provided to the Court for its in camera review, is exempt from disclosure for the following reasons. First, the document qualifies as an intra-agency memoranda even though it was drafted by an outside consultant. See Judicial Watch, Inc. v. Dep't of Energy, 412 F.3d 125, 130 (D.C. Cir. 2005) ("When an agency record is submitted by outside consultants as part of the deliberative process . . . we find it entirely reasonable to deem the resulting document to be an 'intra-agency' memorandum for purposes of determining the applicability of Exemption 5.") (citation omitted). Second, the document is predecisional because its date of April 7, 2000, predates the release of the challenged hemp regulations, which were published on October 9, 2001. Defs.' Opp'n at 8, 11. Finally, the document is deliberative because it concerns "factual summaries [on the worldwide economic impact of industrial hemp] that were written to assist the making of a discretionary decision." Mapother, 3 F.3d at 1539. Accordingly, document 438-51 merits exemption under Exemption 5.

With respect to segregability, the Court finds that there are no non-exempt facts contained in document 438-51 that would warrant an analysis of whether the DEA has adequately justified non-segregability. For example, document 438-51 contains no factual information that was compiled merely to inform an official of facts that were intended to subsequently be made available to a third party. See Mapother, 3 F.3d at 1539 (referring to Playboy Enter. v. Dep't of Justice, 677 F.2d 931, 936 (D.C. Cir. 1982) (holding that Exemption 5 did not apply to a Department of Justice report prepared merely to inform the Attorney General of facts that he would make available to Congress). Nor does it contain any information that does not amount to a point of view. Id. Instead, the factual information in document 438-51 relates exclusively to the worldwide economic impact of industrial hemp and represents a mandatory consideration the

DEA must make as part of the deliberative process associated with the promulgation of new regulations. See 66 Fed. Reg. 51535-38. Accordingly, document 438-51 is totally exempt from disclosure pursuant to Exemption 5.

## IV. Conclusion

For the foregoing reasons, the Court denies the Plaintiff's Motion for Entry of Order as to Remaining Documents in Dispute with respect to documents 351-53, 386, and 438-51, as all of these documents are exempt from disclosure under FOIA Exemption 5. The Court further concludes that document 265 is exempt from disclosure pursuant to Exemption 5. Finally, the Court need not make a ruling as to whether documents 389 and 884 are exempt from disclosure because those determinations are now moot.[4]

**SO ORDERED** on this 30th day of June, 2006.

REGGIE B. WALTON
United States District Judge

---

[4] An Order consistent with this Memorandum Opinion is being issued contemporaneously herewith.